## FLANIKEN v. STATE.

### No. 10044.

Court of Civil Appeals of Texas. Austin.

May 14, 1952.

Paul Petty, Ballinger, for appellant.

Price Daniel, Atty. Gen., Lawrence Jack Moore, County Atty., Ballinger, Clyde B. Kennelly, Asst. Atty. Gen., Calvin B. Garwood, Asst. Atty. Gen., for appellee.

GRAY, Justice.

This suit was filed under the authority of Article 666–42(b), Vernon's Ann. Penal Code, to forfeit a quantity of beer (984 cans) and a 1947 Dodge one and one-half ton truck. The beer and truck were seized by the Sheriff of Runnels County, in that county, and at the time of the seizure the beer was in the truck and both were in the possession of Doss Dee Flaniken. It was agreed that Runnels County was a dry area.

Doss Dee Flaniken was alleged to be a party interested in the property and was cited to appear at the trial. Mrs. Len Kiper, a widow and a sister of Flaniken, intervened. Art. 666–42(c), Vernon's Ann. P.C. She claimed the truck, or, in the alternative, alleged that she held a valid lien against it securing the payment of an indebtedness owing to her by Flaniken.

At a nonjury trial Flaniken did not answer and did not testify. A judgment forfeiting the beer and the truck to the State and denying relief to Mrs. Kiper was rendered. She alone has appealed.

The issue of the ownership of the truck is not before us. The only point presented is to the effect that the trial court erred in failing to direct that appellant be paid $917 out of the proceeds of the sale of the truck because the undisputed evidence shows that she has a valid lien to secure her indebtedness in that amount.

Findings of fact and conclusions of law were not requested and none were filed.

The certificate of title to the truck listed its owner as D. D. Flaniken; it showed no liens against the truck, and that it was purchased from Morgan Motor Company, Inc., Wichita Falls, Texas. The certificate of title was dated May 11, 1950. Appellant testified that she paid $800 to Morgan Motor Company for the truck and also paid further sums for equipping it for use in the pursuit of a septic tank business. In this respect her testimony was not disputed and was corroborated by her cancelled checks, one of which was payable to Morgan Motor Company for $800 and was dated May 6, 1950. Appellant said that the certificate of title to the truck was issued in the name of Flaniken with her consent and according to her instructions, and that, except for her cancelled checks, she had no written evidence of her lien.

The evidence shows that the truck was placed in the possession of Flaniken soon after its purchase and that, at the time of the seizure on or about July 18, 1951, it had been several months since appellant had seen or heard of him.

There is no evidence that appellant had any knowledge that the truck was to be, or was, used for an unlawful purpose.

Appellant said she lived in Wichita Falls; that Doss Dee Flaniken was sick and that she took care of him at her home there; that she had another brother in the septic tank business for whom she had purchased a truck which had been paid for; that she had no interest in the business, but that she purchased the truck for Doss Dee in order for him to get in business and that he was to pay her as he could.

We quote from appellant's testimony:

"Q. Was the agreement at the time you purchased this truck that Doss Dee Flaniken would pay you back? A. Yes.

"Q. What kind of evidence do you have of that agreement, if any, Mrs. Kieper? A. My word.

"Q. You don't have any notes? A. No.

"Q. And you don't have any written evidence of any kind? A. No.

\* \* \* \* \* \*

"Q. You loaned him the money? A. I bought it and paid for it myself.

"Q. He was going to pay you back? A. For the truck. I didn't get interest, financed, because I didn't want to have that much more expense on him.

"Q. What it actually was, it was a loan to him; he was going to pay you back, is that correct? A. Yes, in a way.

\* \* \* \* \* \*

"You bought him a truck and gave it to him? A. No, I didn't give it to him.

"Q. Were you interested in the business with him? A. Yes, until the truck was paid for.

"Q. Did you receive any profits from the business? A. No.

\* \* \* \* \* \*

"Q. Mrs. Kieper, you had an agreement with your brother he would pay you back for the truck? A. Yes.

"Q. What sort of agreement was that? A. Just an agreement; he wanted a truck and he couldn't buy it; so I bought it for him and paid for it to keep from putting it in the finance, so he would have to pay for it that way.

"Q. When was he to pay you back? A. As he could.

"Q. Over what period of time? A. Within, say, two years time.

"Q. Within two years time? A. What the finance would be.

\* \* \* \* \* \*

"Q. What was your purpose in putting the truck in your brother's name? A. Well, I didn't want to operate the truck.

"Q. How is that? A. I didn't want to operate the truck.

"Q. Did you have any desire at all to protect your title in the truck at that time? A. No, I didn't give that a thought, I don't believe, as I didn't dream it would come to anything like this.

"Q. As far as you were concerned you never intended to press your brother for the title to the truck or possession? A. I expected him to pay me.

"Q. When did you expect him? A. When he could.

\* \* \* \* \* \*

"Q. Now, you say your brother agreed he would pay you back for what you had been out on the truck? A. Yes.

"Q. Has he ever paid any of the money back to you? A. No.

"Q. Does he still owe it to you? A. Yes.

\* \* \* \* \* \*

"Q. Did you and your brother agree the truck would stand good for the debt? A. Yes.

"Mr. Petty: That's all.

"By Mr. Hall:

"Q. I would like to ask one more question, if you please: Mrs. Kieper, you say you and your brother agreed this truck would stand good for the debt; when did you enter into that agreement with him? A. When we bought the truck.

"Q. In other words, you had a definite outstanding agreement with him at the time that this truck was going to stand good for the amount of money you advanced for it, is that correct? A. Maybe not for the amount, because when a truck is used a couple of years you can't sell it for what you pay two years previous.

"Q. Your agreement was maybe the truck would simply stand good for whatever amount it would bring, is that right? A. Sure.

"Q. And for the amount of this particular debt did he agree with you the truck would stand good for that amount? A. Yes.

"Q. Whatever amount it would bring at the time? A. If he couldn't pay for the truck the truck was mine."

 It is our opinion that the evidence goes no further than to show the relation of debtor and creditor as between Flaniken and appellant. Appellant purchased and equipped the truck and delivered it to Flaniken with some understanding that she be repaid. However if it be conceded that appellant's testimony was sufficient to present an issue of fact as to the existence of the alleged lien, or even that it was sufficient to support a finding to that effect, it cannot be held to be conclusive of the issue and require a holding that the lien (as between the parties) existed. The fact that appellant furnished the purchase money for the truck with the understanding that she would be repaid would not give her a lien on the truck. Batson v. First Nat'l Bank of Normangee, Tex.Civ.App., 60 S.W.2d 551, error dism.; 28 Tex.Jur. p. 14, Sec. 10. Further, the testimony of appellant was not so clear, direct and positive that it must be taken as true but it presented only a fact issue to be determined by the trier of the facts. Cochran v. Wool Growers Central Storage Co., 140 Tex. 184, 166 S.W.2d 904; Giannukes v. Sfiris, 125 Tex. 354, 81 S.W.2d 999; Simmonds v. St. Louis B. & M. Ry. Co., 127 Tex. 23, 91 S.W.2d 332.

Subsection c of Article 666–42, supra, provides for lienholders to intervene in suits for forfeiture of property, and further provides:

"All such liens against property sold under this Section shall be transferred from the property to the proceeds of its sale. In case such lien is not established to the satisfaction of the court the judgment shall be entered ordering same disposed of as provided in subsection (b) of this Section."

Appellant's point is overruled and the judgment of the trial court is affirmed.

Affirmed.